## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Semrad Law Firm, LLC | Case No. 23-10512 (JTD) |
| Debtor.[1] | |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION OBLIGATIONS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, hereby move this Court (the "Motion") for entry of interim and final orders pursuant to sections 105(a), 363, 507 and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing, but not directing, the Debtor to pay and honor certain prepetition wages, benefits and other compensation obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to prepetition wages and benefits; and (iii) granting related relief. In addition, the Debtor is seeking to schedule a final hearing (the "Final Hearing") on the Motion. In support of this Motion, the Debtor incorporates by reference the *Declaration of Patrick Semrad in Support of First Day*

---

[1] The last four digits of the Debtor's federal tax identification number are 8456. The Debtor's mailing 11101 S. Western Avenue, Chicago, Illinois 60643.

*Relief* (the "<u>First Day Declaration</u>")[2] filed contemporaneously herewith and respectfully represents as follows:

## JURISDICTION

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 105(a), 363, 507 and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h), and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

3.     Pursuant to Local Rule 9013-1(f), the Debtor's consent to the entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4.     On April 26, 2023, (the "<u>Petition Date</u>"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code as a debtor defined in Bankruptcy Code section 1182(1) and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended (the "<u>SBRA</u>").

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5.      No trustee, examiner, or official committee has been appointed in this case. The Debtor is operating its businesses as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      Additional detail regarding the Debtor, its business, the events leading to commencement of this case, and the facts and circumstances supporting the relief requested herein is set forth in the First Day Declaration and is incorporated herein by reference.

## EMPLOYEE COMPENSATION AND OBLIGATIONS[3]

### I.      The Employees

7.      As of the Petition Date, the Debtor's workforce constitutes sixty-three (63) active employees, all of which are employed on a full-time basis.  Approximately fifteen (15) employees are paid on an hourly basis, and forty-eight (48) employees are paid a salary.  None of the employees are unionized or party to collective bargaining agreements or similar labor arrangements.

8.      The employees include attorneys and administrative staff professionals.

9.      The Debtor's employees possess the institutional knowledge, experience and skills necessary to support the Debtor's business operations during this chapter 11 case.  In addition to the employees' compensation, the Debtor also incurs other obligations for employee programs, such as bonuses, vacation, federal and state withholding taxes and other withheld amounts, 401(k) contributions, health and welfare benefits, expense reimbursements, and programs that the Debtor historically has provided in the ordinary course of business.  The programs provided by the Debtor to its employees, as more fully described below, are referred to

---

[3]     The description of employee compensation, obligations, benefits and programs described herein are for summary purposes only and are qualified in their entirety by the applicable documents and/or agreements governing such compensation, obligations, benefits and programs.  In the event of any inconsistency, the applicable documents and/or agreements governing such compensation, obligations, benefits and programs control.

herein as the "<u>Employee Programs</u>," and the obligations to the employees thereunder are referred to herein as the "<u>Employee Obligations</u>."[4]

10.     In addition to the employees, the Debtor also retains individuals as independent contractors (the "<u>Independent Contractors</u>").  Currently, the Debtor employs three Independent Contractors, though this number fluctuates based on the Debtor's specific needs at any given time.  The Independent Contractors provide security, staffing and energy related services.  Such services are necessary to the operation of the Debtor's business.

## II.     Employee Programs and Employee Obligations

### A.     Employee Wages

11.     Historically, the Debtor pays all employees on the 5th and 24th days of a particular month.  The most recent payroll was paid to employees on April 5, 2023.  The April 24, 2023 payroll was not made.  On average each month, the Debtor pays approximately $510,000.00 in U.S. base wages for current, non-furloughed employees.  As of the Petition Date, the Debtor owes approximately $265,000.00 in wages and salaries.

12.     The Debtor requests that it be authorized to honor prepetition wages and salaries up to $265,000.00.  Additionally, the Debtor seeks authority to continue to pay wages that become due after the Petition Date in the ordinary course of business.  To maintain the morale and dedication of its current employees, the Debtor believes it is important to demonstrate its ongoing commitment to its employees by continuing to honor employee wages without interruption.

### B.     Independent Contractor Compensation

---

[4]     For ease in summarizing the Debtor's payment obligations, the definition of Employee Obligations includes Independent Contractor Obligations (as defined below), despite the fact that the Independent Contractors are not employees of the Debtor.

13. The Debtor directly pays the Independent Contractors' compensation (the "Independent Contractor Obligations"). As of the Petition Date, the Debtor owes approximately $29,429.71 in Independent Contractor Obligations. The Debtor seeks authority, but not direction, to honor all Independent Contractor Obligations that arose prepetition and that become due in the ordinary course of business post-petition.

### C.    Accrued Vacation

14. In the ordinary course of business, the Debtor provides eligible employees with paid personal and vacation time ("PTO"). The PTO benefit year runs from the employees' first day of employment to their anniversary date. Employees accrue vacation as follows: (1) after one (1) year of employment, depending on their role with Debtor, employees can accrue eighty (80) hours of vacation;[5] and (2) every year subsequent to the anniversary of an employee's start date with the Debtor, employees will earn one (1) additional paid vacation day (as accrued and unused "Accrued Vacation"). Additionally, employees receive forty (40) hours of sick time after being employed for six (6) months, which expire at the end of the calendar year. Unused PTO does partially carry over into the following year up to a cap, unless otherwise provided by state and local law. The Debtor seeks authority to continue its existing PTO policy in the ordinary course of business on a post-petition basis.

15. As of the Petition Date, the Debtor estimates that, in total, the value of all accrued and unpaid prepetition Accrued Vacation for all employees is approximately $210,184.35. The Debtor requests that it be authorized to honor prepetition Accrued Vacation that may be required to be paid upon termination of such employees up to an amount of $210,184.35 and continue to honor all post-petition Accrued Vacation as it comes due in the ordinary course.

---

[5] Support staff is limited to forty (40) hours of vacation per year.

D.      **Payroll Taxes and Withholding Obligations**

16.      Each pay period, the Debtor deducts certain amounts directly from employees' pay, including, but not limited to pre- and after-tax deductions payable pursuant to certain of the Employees Obligations, legally-ordered deductions and other miscellaneous deductions (collectively, the "Deductions").

17.      Based upon the employees' salaries and wages, the Debtor also is required by law to withhold amounts related to federal, state and local income taxes, as well as Social Security and Medicare, and to remit such withholdings to the applicable authorities.  The Debtor is additionally required to make matching payments from its own funds for Social Security and Medicare and to pay, based on a percentage of gross payroll, state and federal unemployment insurance, employment training taxes and state disability insurance contributions (all of the foregoing, collectively, the "Payroll Tax Obligations").  Each pay cycle, the Debtor withholds applicable Payroll Tax Obligations from employees' wages and remit such amounts to the applicable authorities.

18.      The Debtor estimates that, as of the Petition Date, it has approximately $80,000.00 prepetition Deductions and Payroll Tax Obligations (collectively, the "Withholding Obligations") required to be remitted to the appropriate third-party recipients.  The Debtor seeks authorization, but not direction, to pay and remit the Withholding Obligations to the appropriate authorities consistent with the Debtor's prepetition practices.

E.      **Health and Wellness Benefits**

19.      The Debtor has a partially self-insured medical benefit plan for eligible employees administered by United Health Care (the "Health Plan").  Additionally, the Debtor provides eligible employees with access to dental and vision coverage through PLIC-SBD Grande

Island (collectively with the Health Plan, the "Benefit Plans").  The Debtor contributes a portion of the monthly premiums on the employees' behalf for the Benefit Plans.  The Debtor estimates that the total amount of monthly premiums under the Benefit Plans is approximately $33,491.62.  As of the Petition Date, all Benefit Plan premiums have been fully satisfied.  The Debtor seeks authority, but not direction, to continue the Benefit Plans with respect to all employees, including those that have been furloughed, and to honor all Benefit Plan contributions that become due in the ordinary course of business post-petition.

### F.    401(k) Savings Plan

20.    The Debtor also offers to eligible employees participation in a 401(k) savings plan administered by Old National Bank and Charles Schwab (the "401(k) Savings Plan").  Employee contributions are one hundred percent (100%) vested.  The Debtor requires six (6) months of minimum service time before enrolling into the 401(k) Savings Plan.  The Debtor does not match employee contributions.

### G.    Workers' Compensation Program

21.    Under applicable law, the Debtor is required to maintain a workers' compensation insurance program to cover employees' workers' compensation claims arising from or related to their employment with the Debtor (the "Workers' Compensation Program") and to satisfy the Debtor's obligations arising under or related to the Workers' Compensation Program (collectively, the "Workers' Compensation Obligations").

22.    For each claim under the Workers' Compensation Program, the Debtor files an injury report with a third-party administrator, State Farm, which performs an independent investigation of whether the claim is eligible for coverage.  State Farm administers and pays out eligible claims.  The Debtor does not have any additional obligations outside of paying annual

premiums to $9,186.90, which the last monthly instalment was made on April 5, 2023. As of the Petition Date, the Debtor does not have any outstanding Workers' Compensation Obligations.

### H.    Bonus and Incentive Plans

23.    The Debtor maintains an incentive plan for certain employees. The incentive plan is carefully calibrated to ensure that eligible employees are rewarded for their efforts toward the Debtor's financial performance and productivity. Pursuant to this Motion, the Debtor seeks authority to continue this incentive plan with respect to employees who are not insiders of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code), as detailed below. For the avoidance of doubt, this Motion does not seek to continue any incentive plans with respect to insiders, which may be addressed in a subsequent motion to be filed with the Court.[6]

24.    In the ordinary course of business, the Debtor offers bonuses to attorneys based on performance (the "Bonus"). The Bonus is paid quarterly and can range from between ten percent (10%) to twenty percent (20%) of an attorney's annual compensation divided by four (4). The Debtor seeks authority to continue paying this Bonus.

### RELIEF REQUESTED

25.    By this Motion, the Debtor requests entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (i) authorizing the Debtor to pay and honor Employee Obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to prepetition Employee Obligations; and (iii) granting related relief.

---

[6]    The Debtor reserves the right to seek, through another motion, approval of incentive plans with respect to insiders that are consistent with section 503(c) of the Bankruptcy Code.

**BASIS FOR RELIEF**

**I.      Authority to pay Employee Obligations and continue Employee Programs is warranted.**

26.     The Debtor's business depends upon reliable and loyal employees. Honoring the Employee Obligations and Employee Programs is essential to ensure such reliability and loyalty. Failing to promptly honor such obligations will create doubt and concern among the employees and could lead to a significant loss of employees. Significant loss of the Debtor's already depleted workforce at this critical time would immediately and irreparably harm the Debtor's ability to maintain operations to the detriment of all parties in interest.

27.     Therefore, the Debtor seeks the relief in this Motion on several bases under the Bankruptcy Code. First, certain of the prepetition obligations are entitled to priority under section 507 of the Bankruptcy Code. Second, the Debtor is required to pay and remit certain Withholding Obligations under section 541 of the Bankruptcy Code as these amounts are not property of the estate. Third, the Debtor may honor and pay Employee Obligations in the ordinary course of business pursuant to section 363 of the Bankruptcy Code. Finally, honoring the Employee Obligations is a sound exercise of the Debtor's business judgment, and permissible under the "doctrine of necessity."

**A.      Certain of the Employee Obligations are entitled to priority treatment under section 507 of the Bankruptcy Code.**

28.     Pursuant to Bankruptcy Code sections 507(a)(4) and (5), certain of the unpaid prepetition Employee Obligations—including unpaid wages and Accrued Vacation—are entitled to priority treatment in an amount up to $15,150.00 for each individual. To the extent that such claims are afforded priority status, the Debtor must pay these claims in full prior to payment of general unsecured creditors under a plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, and

sick leave pay earned by an individual, and (b) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $15,150.00 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C. § 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

29.    Accordingly, granting the relief sought with respect to Employee Obligations will affect only the timing of payments to employees, and will not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtor submits that payment of unpaid Employee Obligations will enhance value for the benefit of all stakeholders because it will help ensure that the employees—the lifeblood of the Debtor's business operations— will continue to provide vital services to the Debtor at this critical juncture and will preserve the value of the Debtor's estate.  In addition, to the extent that the Debtor is authorized, in a reasonable exercise of its business judgment, to pay prepetition Employee Obligations on a postpetition basis in the ordinary course of business, such payments will enhance the value of the Debtor's estate by preserving the value of the Debtor's business for all stakeholders.

**B.    Payment of certain Employee Obligations is required by law under section 541 of the Bankruptcy Code.**

30.    The Debtor also seeks authority to pay Withholding Obligations to the appropriate entities in the ordinary course.  These amounts principally represent amounts that employees, governments and judicial authorities have designated for withholding from employees' paychecks.  These withholdings include child support and alimony payments, which are not

considered property of the Debtor's estate because the Debtor has withheld such amounts from employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(7) and (d).

31.     Similarly, applicable U.S. federal and state laws require the Debtor to withhold federal, state and local income taxes from employees' paychecks and to pay such amounts to the appropriate taxing authority.  *See* 26 U.S.C. §§ 6672 and 7501(a); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–96 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  These Withholding Obligations are also not property of the Debtor's estate and, accordingly, the Debtor requests that the Court authorize them to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

**C.     The Debtor may honor and pay Employee Obligations in the ordinary course of business pursuant to section 363 of the Bankruptcy Code.**

32.     The Debtor's ability to compensate current employees in the ordinary course of business is necessary to the Debtor's success in this Chapter 11 Case and is consistent with section 363(c) of the Bankruptcy Code.  *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business of the debtor is authorized to be operated under [section 1008 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing"); 11 U.S.C. § 1108 (providing that a debtor in possession, as trustee, may operate the debtor's business unless a court orders otherwise).  As such, the Debtor believes sufficient cause exists to pay Employee Obligations in the ordinary course on a postpetition basis.

D.     **Payment of the Employee Obligations is a sound exercise of the Debtor's business judgment.**

33.     Courts in this jurisdiction and others generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain prepetition claims).  When authorizing such payments, courts have relied upon several legal theories rooted in Bankruptcy Code sections 1107(a), 1108, 363(b) and 105(a).

34.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim."  *Id*.  Indeed, the *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ."  *Id*.  Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition

obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages).

35.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. This section, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of services essential to the debtors' business reorganization plan. *See Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

36.     In addition to the authority granted a debtor in possession under Bankruptcy Code sections 1107(a), 1108, 363(b) and 105(a), courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 310 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization. *See, e.g.*, *Lehigh & New England Ry. Co.*, 657 F.2d at 581–82.

37.     Today, the rationale for the necessity of payment rule—the preservation of a business in chapter 11 cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. at 826 (finding that payment of

prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); 2 Collier on Bankruptcy ¶ 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (discussing cases in which courts have relied upon the doctrine of necessity or the necessity of payment rule to pay prepetition claims immediately).

38.     The relief requested herein will benefit the Debtor's estate and creditors by allowing the Debtor's business operations to continue without interruption.  In the absence of such payments, the Debtor believes that its employees may immediately seek alternative employment opportunities and will cease providing services to the Debtor.  Such a development would have a devastating impact on the Debtor's business, deplete the Debtor's workforce and diminish confidence in the Debtor.  Moreover, the loss of valuable individuals and the recruiting efforts that would be required to replace any essential employees would be a massive and costly distraction at a time when the Debtor should be focusing on this Chapter 11 Case.

## II.     Cause exists to authorize the Debtor's financial institutions to honor checks and electronic fund transfers.

39.     The Debtor represents that it has sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves and expected cash flows from ongoing business operations.  Also, under the Debtor's existing cash management system, the Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment made with respect to the Employee Obligations.  Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks should be authorized and directed, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests with respect to the Employee Obligations.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

40.     In order for a debtor to obtain relief to make payments within 21 days of the petition date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely, absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, No. 08-12412, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for post-petition financing, adequate protection, and modification of the stay where the court found that the relief was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' businesses); *In re New World Pasta Co.*, No. 04-02817, 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (same); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens ability to reorganize).

41.     Here, immediate and irreparable harm would result if the relief requested herein is not granted. As discussed above, the Debtor's employees are integral to the Debtor's operations. Failing to satisfy obligations to them in the ordinary course of business will jeopardize loyalty and trust, possibly diminishing the Debtor's workforce and thereby disrupting the Debtor's operations. It is imperative that the Debtor maintain the value of the business while the Debtor is contemplating and formulating its plan of reorganization. Moreover, the Debtor's employees rely on the Debtor's timely payment of their compensation and provision of benefits for their livelihood. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 for the prepetition amount of Employee Obligations that the Debtor seeks authority to pay pursuant to the Interim Order.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

42.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a) and (ii) the 14-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

**DEBTOR'S RESERVATION OF RIGHTS**

43.     Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the proposed interim order and the proposed final order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of any of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

**NOTICE**

44.     Notice of this Motion will be provided to:  (i) the Office of the United States Trustee; (ii) the Subchapter V trustee appointed in this case (the "Subchapter V Trustee"); (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Delaware Secretary of State; (vi) the Delaware Secretary of the Treasury; (vii) each of the Debtor's twenty

(20) largest unsecured creditors; and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the proposed interim order substantially in the form annexed hereto as **Exhibit A** granting the relief requested in the Motion and such other and further relief as may be just and proper, and (b) schedule a Final Hearing on the Motion as soon as is otherwise practicable thereafter to consider entry of the proposed final order substantially in the form annexed hereto as **Exhibit B**.

Dated:   April 26, 2023
Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Joseph C. Barsalona II*
Joseph C. Barsalona II (No. 6102)
1007 North Orange Street, 4th Floor, Suite 183
Wilmington, DE 19801-1242
Telephone: (302) 592-6496
Email: jbarsalona@pashmanstein.com

-and-

Richard C. Solow (*pro hac vice* pending)
The Woolworth Building
233 Broadway, Suite 820
New York, New York 10279
Email: rsolow@pashmanstein.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit A</u>**

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Semrad Law Firm, LLC | Case No. 23-10512 (JTD) |
| Debtor.[1] | **Re: D.I.** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN
PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION
OBLIGATIONS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL
OBLIGATIONS RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order") and final order pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004 and Local Rule 9013-1(m):   (i) authorizing the Debtor to pay and honor certain prepetition wages, benefits and other compensation obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to prepetition employee wages and benefits; and (iii) granting related relief, all as more fully described in the Motion; and upon consideration of the First Day Declaration; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided under the circumstances; and it appearing that the relief requested by the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

---

[1]   The last four digits of the Debtor's federal tax identification number are 8456.  The Debtor's mailing 11101 S. Western Avenue, Chicago, Illinois 60643.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is authorized, but not directed, in a reasonable exercise of its business judgment, to: (i) pay or otherwise honor the Employee Obligations; (ii) honor and continue the Employee Programs that were in effect as of the Petition Date in the ordinary course of business; and (iii) make all Withholding Obligation payments relating to the Employee Obligations as required by law; provided, however, that the aggregate of cash payments provided for in this paragraph shall not exceed $15,150 per individual employee as provided in section 507(a)(4)-(5) of the Bankruptcy Code; provided, further, that aggregate payments under this Interim Order on account of Employee Obligations will not exceed $600,000.00.   For the avoidance of doubt, this authority is inclusive of any prepetition amounts that may become payable under this Interim Order to third-party service providers that administer, insure or otherwise facilitate the Employee Obligations.

3.      To the extent the Debtor makes any payments on account of prepetition claims under a self-insured Health Plan, such payments shall be made without regard to the current employment status of the employee, provided that such employee (or dependent) was eligible for coverage on the date such claim was incurred.

4.      The Debtor is authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed to its employees.

5.      All banks and other financial institutions are hereby directed to receive, process, honor, and pay any and all checks presented for payment and electronic transfer requests

made by the Debtor related to the payment of the obligations described in the Motion and approved herein, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date.  All such banks and financial institutions are further directed to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Interim Order.

6. Subject to the requirements of this Interim Order, the Debtor is authorized, but not directed, to modify, change and/or discontinue any of the Employee Obligations and Employee Programs and to implement new Employee Obligations and Employee Programs in the ordinary course of business during the pendency of this Chapter 11 Case in its discretion without the need for further Court approval.

7. Notwithstanding the foregoing, nothing in this Interim Order authorizes or approves any payments or transfers subject to section 503(c) of the Bankruptcy Code.  Further, nothing in this Interim Order shall be deemed to violate or permit a violation of section 503(c) of the Bankruptcy Code.

8. Nothing in the Motion or in this Interim Order is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any claim, including the validity or priority thereof or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

9. Responses or objections to the Motion and entry of a final order with respect to the Motion must: (i) be made in writing; (ii) state with particularity the grounds therefor;

(iii) conform to the Bankruptcy Rules and the Local Rules; and (iv) be served upon (a) proposed counsel to the Debtor, Pashman Stein Walder Hayden, P.C., 1007 North Orange Street, 4th Floor, Suite #183, Wilmington, Delaware, 19899-1347, Attn: Joseph C. Barsalona II (jbarsalona@pashmanstein.com) and Richard C. Solow (rsolow@pashmanstein.com), (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Jane M. Leamy (jane.m.leamy@usdoj.gov), and (c) the Subchapter V Trustee, [●] (the "Notice Parties").

10.     The deadline by which objections to the Motion and the final order must be filed and received by the Notice Parties is _____, 2023 at 4:00 p.m. (prevailing Eastern Time).  A final hearing, if required, on the Motion will be held on _____ _____, 2023 at _____ (prevailing Eastern Time).  If no objections are filed to the Motion and entry of this Interim Order on a final basis, the Court may enter a final order without further notice or a hearing.

11.     The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Interim Order.

12.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

14.     This Court shall retain jurisdiction with respect to all matters related to the interpretation or implementation of this Interim Order.

Date: _____, 2023
        Wilmington, Delaware

        _____
        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Semrad Law Firm, LLC | Case No. 23-10512 (JTD) |
| Debtor.[1] | **Re: D.I.** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION OBLIGATIONS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (the "Interim Order") and a final order (this "Final Order") pursuant to sections 105(a), 363, 507 and 541 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004 and Local Rule 9013-1(m): (i) authorizing the Debtor to pay and honor certain prepetition wages, benefits and other compensation obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to prepetition employee wages and benefits; and (iii) granting related relief, all as more fully described in the Motion; and the Court having previously entered the Interim Order; and upon consideration of the First Day Declaration; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

---

[1]    The last four digits of the Debtor's federal tax identification number are 8456.  The Debtor's mailing 11101 S. Western Avenue, Chicago, Illinois 60643.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on a final basis as set forth herein.

2.     The Debtor is authorized, but not directed, in a reasonable exercise of its business judgment, to: (i) pay or otherwise honor the Employee Obligations; (ii) honor and continue the Employee Programs that were in effect as of the Petition Date in the ordinary course of business; and (iii) make all Withholding Obligation payments relating to the Employee Obligations as required by law, provided, however, that the aggregate of cash payments provided for in this paragraph shall not exceed $15,150 per individual employee as provided in section 507(a)(4)-(5) of the Bankruptcy Code.  For the avoidance of doubt, this authority is inclusive of any prepetition amounts that may become payable under this Final Order to third-party service providers that administer, insure or otherwise facilitate the Employee Obligations.

3.     To the extent the Debtor makes any payments on account of prepetition claims under a self-insured Health Plan, such payments shall be made without regard to the current employment status of the employee, provided that such employee (or dependent) was eligible for coverage on the date such claim was incurred.

4.     The Debtor is authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed to its employees.

5.     All banks and other financial institutions are hereby directed to receive, process, honor, and pay any and all checks presented for payment and electronic transfer requests made by the Debtor related to the payment of the obligations described in the Motion and approved herein, whether such checks were presented or such electronic transfer requests were submitted

before, or are presented or submitted after, the Petition Date. All such banks and financial institutions are further directed to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Final Order.

6.      Subject to the requirements of this Final Order, the Debtor is authorized, but not directed, to modify, change and/or discontinue any of the Employee Obligations and Employee Programs and to implement new Employee Obligations and Employee Programs in the ordinary course of business during the pendency of this Chapter 11 Case in its discretion without the need for further Court approval.

7.      Notwithstanding the foregoing, nothing in this Final Order authorizes or approves any payments or transfers subject to section 503(c) of the Bankruptcy Code. Further, nothing in this Final Order shall be deemed to violate or permit a violation of section 503(c) of the Bankruptcy Code.

8.      Nothing in the Motion or in this Final Order is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any claim, including the validity or priority thereof or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise. Likewise, any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

9.      The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Final Order.

10.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

11.     This Court shall retain jurisdiction to hear and determine all matters related to the interpretation or implementation of this Final Order.

Date: _____, 2023
        Wilmington Delaware

_____
UNITED STATES BANKRUPTCY JUDGE